UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

THE CITY OF NEW YORK,

                Plaintiff,

                                   OPINION AND ORDER

        - against -

                                   06 Civ. 13122 (KMK)(RLE)

GROUP HEALTH, INC., et al.,

                Defendants.

------------------------------------------------------------

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

On November 13, 2006, the City of New York ("City") commenced this antitrust action against Group Health, Incorporated ("GHI"); HIP Foundation, Inc.; and Health Insurance Plan of Greater New York (latter two defendants, collectively "HIP") seeking temporary and permanent injunctive relief to prevent the merger of GHI and HIP, providers of health insurance. Complaint ("Compl.") ¶ 1. The City alleges that a merger would create a monopoly in New York City for the sale of low-cost health insurance to the City, employees and retirees, employee unions, as well as other employers with connections to the City. **Id**. at ¶ 2. Defendants deny that the affiliation will have an anti-competitive effect on the relevant health insurance market. *See* HIP Answer at 7. Pending before this Court is the City's motion for an order compelling HIP to produce certain documents responsive to the City's document requests. Plaintiff's Memorandum of Law in Support of Motion to Compel Under Federal Rule of Civil Procedure 37 (a) ("HIP Mem.") at 1. For the reasons set forth below, the City's motion to compel production of documents is **DENIED, without prejudice**.

## II.  BACKGROUND

On November 13, 2006, the City served Plaintiff's First Request for Production of Documents to Defendants HIP Foundation, Inc., and Health Insurance Plan of Greater New York ("City Doc. Req."). *See* Declaration of June R. Buch ("Buch Decl."), Exh. A.  The requests at issue are Nos. 1- 4, which seek copies of all documents that defendants voluntarily produced to the Attorney General, Justice Department, Insurance Department, and the Health Department and other agencies as part of a prior investigation of defendants' merger.  Buch Decl., Exh. A at 5.  These documents concern HIP's cost, expenses, and profits attributable to individual employers within the community-rated HMO product.  Defendants' Memorandum of Law in Opposition to Motion to Compel the Production of Cost and Experience Documents ("Def. Memo.") at 1-2.  The City's purported reason for seeking disclosure of such information is to analyze the amount by which the merger would allow defendants to profitably raise their premiums, because within a community-rated HMO product, the provider cannot raise the premium to the City without raising the premium for its other large-group customers.  Plaintiff's Memorandum of Law in Support of Motion to Compel Under Federal Rule of Civil Procedure 37 (a) ("City Mem.") at 7.  Because the City would represent 60% of the merged entity's market value, it claims that information concerning the cost of providing the product to the City, as opposed to the other individual commercial employers, is necessary to determine whether the merged entity could afford to lose some of its commercial business if it raised its price.  *See* Buch Decl. Exh. D at 23-4, 43.

In response to the document request, HIP generally objected on the grounds of relevance, privilege, and burdensomeness.  **Id**., Exh. C, HIP Defendants' Response to Plaintiff's First

Request for Production of Documents ("HIP Doc. Resp.") ¶¶ 1, 2, 3. HIP further objected to the production of documents that are confidential, proprietary, or which relate to trade secrets or competitively sensitive information, as well as documents relating to the loss experience or expense in serving any customer of a community-rated product, claiming that such information would contravene insurance regulatory requirements and policies. **Id**., ¶¶ 5, 6. During a telephone conference held before the Court on December 20, 2006, the relevance of the requested documents was discussed but not sufficiently established, leading the City to file the instant motion.

### III. DISCUSSION

**A. Legal Standard**

The scope of discovery is generally limited to any matter, not privileged, which is relevant to the claim or defense of any party or appears reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." **Ferguson v. Lion Holding, Inc**., 2005 WL 1216300, *2 (S.D.N.Y. Mar. 25, 2005). The Court has broad discretion in managing discovery. **Wills v. Amerada Hess Corp**., 379 F.3d 32, 41 (2d Cir. 2004); **In re Fitch, Inc**., 330 F.3d 104, 108 (2d Cir. 2003); **Cruden v. Bank of New York**, 957 F.2d 961, 972 (2d Cir. 1992).

**B. Relevance**

The ultimate issue in this anti-trust action is whether the merger will substantially lessen competition when GHI ceases to be a competitor of HIP, and as a result, whether HIP will have the ability to profitably raise its prices. *See* Def. Mem. at 2, City Mem. at 7. The City argues

that customer-specific cost information is relevant because it is necessary to calculate the relative profitability of the City's business compared to HIP's other large-group customers, in order to calculate the net profitability to HIP of a given increase in its premiums after the merger. City Mem. at 3. In support of this contention, the City submits the Declaration of Frank R. Lichtenberg ("Lichtenberg"), an expert in the economics of health care. Buch Decl., Exh. E. Lichtenberg concludes that when a profit-maximizing firm operates within two distinct markets comprising different percentages of the market, but must charge the same price in each market, the price of the product will depend on the relative cost of benefits provided in each market, not just on the average cost. **Id**., Exh. E at 4. Here, HIP provides insurance in two markets– the City and related entities, and other private large-group employers– each with different market demands. **Id**. However, within a community-rated HMO plan, it must charge the same price in each market; therefore, changes in cost or competitive condition in one market effects the second market. **Id**. Lichtenberg concludes that financial data by individual employers is necessary to accurately predict the effect of the merger on insurance premiums. **Id**. at 3.

      HIP opposes the motion to compel by arguing that the information sought is not relevant because it lacks probative value without also obtaining considerable confidential information from third parties. Def. Mem. at 3. Second, HIP contends that Lichtenberg's analysis erroneously assumes that GHI currently acts as a constraint on HIP's ability to profitably raise its prices. **Id**. at 2. Alternatively, HIP argues that the marginal value of the information being sought is greatly outweighed by the public policy concerns and the risk of commercial harm it poses to HIP. **Id**. at 6.

      Based on the record before the Court, the request fails on relevance grounds. The City's

argument, supported by Lichtenberg's analysis, is that because the City makes up the majority of the HIP's consumer market, it is possible for HIP to raise prices profitably even if it resulted in a certain amount of loss of business in other commercial accounts.  The City therefore maintains that the information sought is relevant to "whether, and if so by how much, HIP will be able to raise the premium for its HMO product to the City following the merger."  City Mem. at 7.  HIP argues that the proposed Lichtenberg analysis requires a determination of the elasticities of demand in the City market compared to the broader market in which HIP competes.  HIP Mem. at 4.  In order to determine the elasticity of demand for HIP's product, the "financial data (e.g., earned premiums, cost of benefits provided, and general administrative expense) *by employer*, not merely average data" is necessary.  Lichtenberg Dec. ¶ 9.  HIP argues that, assuming the information sought contains the financial data required for the City account, it would not provide the equivalent information for other employers necessary to do the comparative analysis.  HIP Mem. at 4-5.  Therefore, in order to perform Lichtenberg's analysis, that same information must be obtained from other third-party employers, who may be unwilling to produce such competitively sensitive information.

      The City argues that "[d]iscovery is inherently a process of putting together facts obtained from different sources," and what third-party information the City will need or whether it will be able to obtain that information are not matters to be decided on this motion.  City Mem. at 2-3.  The Court disagrees.  The City has only demonstrated the relevance of the information sought in the context of the comparative analysis necessary to determine the profitability of raising prices after the merger.  For such an analysis to have any predictive validity, similar financial data from the comparators– HIP's commercial customers– is necessary.  Because the information sought is

sensitive, and cannot be used alone, the Court may consider the burden the production would have on the business integrity of the party from whom the information is sought. The City must demonstrate that it has some reasonable likelihood of obtaining the relevant comparative data. Moreover, random samples of other customers may not yield a statistically appropriate example. While it may not be necessary to obtain the financial data from every commercial employer, the City and its expert should at least set forth a plan for identifying which, or how many, employers are needed for an analysis, and which are available for inclusion. *See* Lawrence Wu Declaration ("Wu Decl.") at ¶¶ 6, 8 (data from a significantly large proportion of employers, so that it is representative of HIP's commercial employer accounts, seems necessary). The data has apparently been compiled by HIP and can be delivered to the City without undue delay. Moreover, the City has not demonstrated need to receive the information immediately.

## IV. CONCLUSION

For the foregoing reasons, the City's motion to compel is **DENIED, without prejudice**. The City may ask for reconsideration before the close of discovery if it can identify which individual commercial entities would be necessary for a calculation of the merged entity's profitability of raising prices to have any predictive validity, and that it has the ability to obtain such information from the identified third parties.

**SO ORDERED this 20th day of April 2007**
**New York, New York**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

6