UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK,

                Plaintiff,

- against -

GROUP HEALTH, INC., et al.,

                Defendants.

OPINION AND ORDER

06 Civ. 13122 (RJS) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

On November 13, 2006, the City of New York ("City") commenced this antitrust action against Group Health, Incorporated ("GHI"), HIP Foundation, Incorporated, and Health Insurance Plan of Greater New York (latter two Defendants, collectively "HIP") (hereinafter collectively referred to as "Defendants") seeking temporary and permanent injunctive relief to prevent the merger of GHI and HIP, providers of health insurance. Pending before the Court is Defendants' motion to compel the production of certain documents the City has refused to produce, asserting the deliberative process privilege. For the reasons set forth below, Defendants' motion to compel is **DENIED.**

## II. BACKGROUND

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants seek production of 101 documents that the City withheld or redacted, invoking the deliberative process privilege. Defendants argue that the documents directly relate to the City's consideration of conditions in

the health insurance market and its choice of insurance carriers and plans, and are outside the scope of the privilege. The City argues that the documents are predecisional and deliberative, and relate to high-level decisionmaking about the City's response to the merger and conversion at issue, and about the City's evaluation of proposed legislation and legislative priorities.

## III. DISCUSSION

### A. Legal Standard for Discovery

The scope of discovery is generally limited to any matter, not privileged, which is relevant to the *claim or defense* of any party or appears reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1) (emphasis added). However, "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Ferguson v. Lion Holding, Inc.*, No. 02 Civ. 4258 (PKL) (JCF), 2005 WL 1216300, *2 (S.D.N.Y. Mar. 25, 2005). The Court has broad discretion in managing discovery. *Willis v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004). "Generally, discovery is only limited 'when sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant' or privileged." *Chembio Diagnostic Systems, Inc. v. Saliva Diagnostics Systems, Inc.*, 236 F.R.D. 129 (E.D.N.Y. July 14, 2006) (*quoting Melendez v. Greinerí*, No. 01 Civ. 7888 (RJH) (DCF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003) (*quoting In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992))).

### B. The Deliberative Process Privilege

The deliberative process privilege is a "form of executive privilege [that] allows government officials 'freedom to debate' policies in private." *In re Grand Jury*, 218 F. Supp. 2d

544, 552 (S.D.N.Y. 2002) (*quoting In re Sealed Case (Espy)*, 121 F.3d 729, 737 (D.C. Cir. 1997)). The rationale underlying the privilege is that "'those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process.'" *Flaherty v. Giambra*, No. 02 Civ. 0243E, 2004 WL 816906, at *1 (W.D.N.Y. Jan. 27, 2004) (*quoting Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 481 n.7 (2d Cir. 1999)). Thus, the privilege aspires to "safeguard the quality and integrity of government decisions" by protecting the decisionmaking processes of the executive from discovery in civil actions. *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991).

For a government agency to properly invoke the privilege, "the document asserted to be privileged must be both 'predecisional' and 'deliberative.'" *Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000); *Grand Central*, 166 F.3d at 482; *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 640 (S.D.N.Y. 1991); *Flaherty*, 2004 WL 816906, at *1; *Hopkins*, 929 F.2d at 84. "A document is predecisional when it is 'prepared in order to assist an agency decisionmaker in arriving at [her] decision.'" *Grand Central*, 166 F.3d at 482 (*quoting Hopkins*, 929 F.2d at 84 (*quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)); *Flaherty*, 2004 WL 816906, at *1. A document may be predecisional if the agency can "'(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates.'" *Nat'l Cong.*, 194 F.R.D. at 92 (*quoting Providence Journal Co. v. U.S. Dep't of the Army*, 981 F.2d 552, 557 (1st Cir. 1992)).

"'[R]ecommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency'" are protected by the privilege. *Grand Central*, 166 F.3d at 482 (*quoting Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994)).

A "deliberative" document is "related to the processes by which policies are formulated." *Nat'l Cong.*, 194 F.R.D. at 92 (*quoting Hopkins*, 929 F.2d at 84 (*quoting Jordan v. United States Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc))). Courts have been particularly protective of draft documents because they are inherently deliberative in nature. *See Lead Industries Ass'n v. OSHA*, 610 F.2d 70, 86 (2d Cir. 1979).

In step with the underlying policy purposes, courts have also held the deliberative process privilege "should be invoked only in the context of communications designed to directly contribute to the formulation of *important public policy*." *Nat'l Cong.*, 194 F.R.D. at 95 (emphasis added). Neither "'purely factual' material," nor documents that are "'merely peripheral to actual policy formulation'" are protected by the privilege since "the record must bear on the formulation or exercise of policy-oriented judgment." *Grand Central*, 166 F.3d at 482 (*quoting Ethyl Corp. v. EPA,* 25 F.3d 1241, 1248 (4th Cir. 1994)). Thus, "factual findings and conclusions, as opposed to opinions and recommendations" are discoverable, and the privilege does not protect factual findings or factual material which may be severed from the deliberative portion of a report. *Resolution*, 137 F.R.D. at 641 (internal citations omitted).

Finally, "[t]he deliberative process privilege is qualified; it may be overcome by a showing of need, which is determined on a case by case basis." *In re Grand Jury*, 218 F. Supp. 2d at 553. Once a government agency establishes that the document at issue is privileged, courts

must then determine whether the public interest in disclosing the document is outweighed by the government's interest in preventing disclosure. Specifically, "[w]hen the privilege is at issue, a court must consider 'the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government.'" *Id.* (*quoting Texaco P.R. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995) (citation omitted)). Additional factors weighed in this balancing test include: the relevance of the evidence sought, the availability of other evidence, the role for the government in the litigation, issues involved and the impact on the effectiveness of government employees, and "the possibility of future timidity by government employees who will be forced to recognize that their secrets are voidable." *In re Franklin Nat'l Bank Sec. Litigation*, 478 F. Supp. 577, 582-83 (E.D.N.Y. 1979); *Torres v. City University of New York*, No. 90 Civ. 2278 (RO) (THK), 1992 WL 380561, at *7 (S.D.N.Y. Dec. 3, 1992).

**C. Invoking the Privilege**

Litigants seeking to invoke the deliberative process privilege must, among other things, identify and describe the information or documents sought, and provide "precise and certain" reasons for asserting confidentiality over the requested information. *Mobil Oil Corp. v. Dep't of Energy*, 520 F. Supp. 414, 416 (N.D.N.Y. 1981). This ensures that the documents sought to be protected were indeed part of the deliberative process by which policies or decisions are formulated, as well as genuinely reflective of a deliberative process. *See Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. NLRB*, 845 F.3d 1177, 1180 (2d Cir. 1988). The agency must submit sufficient information about the material to allow the Court to determine if it is privileged. *Resolution*, 137 F.R.D. at 642.

The City's initial attempts to describe the materials were insufficient for the Court to determine whether they met the standards for the privilege, so *in camera* review was necessary. *See Estate of Fisher v. C.I.R.*, 905 F.2d 645, 651 (2d Cir. 1990) (the decision of whether to engage in *in camera* review rests in the sound discretion of the district court); *Kerr v. United States District Court*, 426 U.S. 394, 406 (1976) (*in camera* review is a "highly appropriate and useful means of dealing with claims of governmental privilege"); *see also Resolution*, 137 F.R.D. at 642.

**D. Application of the Privilege in this Case**

The City asserts that all 101 documents at issue are protected by the deliberative process privilege. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Compel ("Pl.'s Mem.") at 1.) In particular, the City argues that the withheld documents all relate to "high-level officials' deliberations about the City's response to the planned HIP-GHI merger and conversion to for-profit status, and about its responses to proposed legislation and the agencies' legislative proposals." *Id.* at 2. With those over-arching interests in mind, the City divides the withheld documents into two categories of protected decisionmaking: (1) "OLR and OMB officials' memoranda and correspondence regarding legislation"; and, (2) "proposed work plans, interim presentations, and drafts of a final report by consultant Mercer Oliver Wyman for Deputy Mayor Doctoroff . . . advising on the City's potential responses to the HIP-GHI merger[.]" *Id.* at 2-3. The City asserts that all of the documents at issue are deliberative and predecisional and should therefore be protected because they relate to the formulation of city policy. *Id.* at 3. Moreover, the City warns that the forced disclosure of these documents would have a "harmful impact" on the "City government's decision-making process." *Id*.

Based upon the descriptions of the withheld documents provided by the City, the Defendants argue that none of the documents should be protected by the deliberative process privilege. (Defendants' Reply Memorandum of Law in Further Support of Their Motion to Compel ("Defs.' Reply") at 1.) Defendants assert that the City's interest in the merger has more to do with commercial concerns than public policy: "The City has brought this action in its capacity as a customer of two merging insurance companies, not as a government enforcing the public's interest." *Id.* at 2. Therefore, Defendants argue that the withheld documents cannot be protected by the privilege. Even if the withheld documents were privileged, Defendants argue that the documents should still be disclosed because "in alleging that the merger will substantially lessen competition and result in an anticompetitive price increase, the City has placed 'at issue' the bases for that claim and how it and the market will respond to such a post-merger effect." *Id.* at 5. In so doing, Defendants argue that the City has waived the deliberative process privilege. *Id.*

The Court has undertaken a comprehensive review of the controversial documents. In general, the documents provided are each, in whole or in part, predecisional: they include documents containing information and discussion relative to the proposed GHI-HIP merger and predate the City's decision of how to respond. Secondly, many of the withheld documents contain, in whole or in part, some element of deliberation, opinion, or analyses with regard to the merger or proposed legislation. Although the majority of documents at issue are deliberative and predecisional, the documents do not specifically relate to important public policy decisions, as required by the privilege. *See Nat'l Cong.*, 194 F.R.D. at 95. The City's evaluation of the merger is too attenuated from important public policy concerns to be protected under the deliberative

7

process privilege. Even accepting that "[t]he City's Health Benefits Program will cost the City approximately $3.4 billion this fiscal year" (Pl.'s Mem. at 8; Declaration of Mark Page ("Page Decl.") ¶ 2) and that the GHI-HIP merger will impact other services the City is able to provide; there remains too great a disconnect between the City's deliberations over the financial impact of the merger and the arguable public policy interest in management and budgetary decisions of the City. The majority of the withheld documents pertain to the likely impact of the merger on the price of health insurance coverage for employees. At best, the documents only peripherally relate to important public policy decisionmaking and as such are outside the scope of the deliberative process privilege. Moreover, the withheld documents are primarily factual, and as such distinctly outside the privilege.

Accordingly, the Court has found that none of the submitted documents are covered by the deliberative process privilege. Furthermore, even if the City had established circumstances meriting protection under the deliberative process privilege, the second stage of the determination requires a balance of interests. Here, the Court would reach the same outcome, as consideration of the respective relevance of the two groups of documents, availability of similar evidence from other sources, and the unlikely event that production of these documents would have a "chilling effect" on public officials' decisionmaking would not weigh in favor of protection.

**E. The Documents are Ultimately Irrelevant**

Although none of the withheld documents are protected by the deliberative process privilege, the Defendants' motion to compel production is **DENIED** for failure to support their claim that the 101 documents at issue are relevant. The Court has determined that: 1) the

8

withheld documents pertaining to the City's "memoranda and correspondence regarding legislation" (Pl.'s Mem. at 2) are not relevant to the claims at issue nor will likely to lead to relevant information; and 2) the withheld documents regarding the City's evaluation of the impact of the merger have either been produced in relevant part, contain only information publicly available or previously provided, or are irrelevant.

In moving to compel production of the 101 documents at issue here, the Defendants have failed to show how these documents are relevant to the underlying claims and defenses.[1] The City's antitrust action alleges the GHI-HIP merger would violate: "Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18; Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; and the Donnelly Act, N.Y. General Business Law § 340." (Compl. ¶ 1.) The Defendants assert that the City's assessment of the merger and its impact, as well as their strategy or response are "highly relevant." (*See* Defs.' Mem. at 8.) Defendants further maintain that the City has placed "in issue its purchasing practices and its assessment of the claimed market for health insurance." *Id.* at 11. They resolve that the City has called into question its bases for alleging the merger will have anticompetitive effects and they claim all related documents are relevant. (Defs.' Reply at 3-4.) However, Defendants failed to provide specific evidentiary support as to why the various communications between City officials that comprise the majority of the controversial documents contain this arguably relevant information.

The opinions and communications of City officials regarding how to respond to the

---

[1]Defendants raise four affirmative defenses: 1) that the Complaint fails to state a claim upon which relief can be granted; 2) that "the Affiliation will not have any anticompetitive effect on the market for health insurance"; 3) "GHI is a weakened competitor and its combination with HIP will not adversely effect competition in a properly defined relevant market"; 4) regarding the Donnelly Act, "New York State Department of Insurance and Department of Health have primary jurisdiction and they have approved the Affiliation." (*See* GHI's Answer at 7-8; *see also* HIP's Answer at 7-8.)

proposed merger will not elucidate either the factual or legal basis for the underlying antitrust cause of action or any cognizable defense. Indeed, Defendants appear to argue that the documents are relevant because the City has not stated that they are not. (*See* Defs.' Reply at 1.) This is an appealing argument on the surface, and one might well question why this dispute wound up on the complicated and contentious road of the deliberative process privilege. Certainly, the Court must bear some responsibility for failing to right the discovery ship as it tacked into the high seas of privilege and away from the calm waters of Rule 26(b). The specific causes of action asserted by the City focus on the likelihood a merger would lessen competition, monopolize a relevant market, and the potential for a merger to unreasonably restrain trade and the furnishing of services. (*See* Compl. ¶¶ 49-51.)

The centerpiece of this claim is a report by Mercer, the consulting firm retained by the City to evaluate the impact of the merger and propose strategy for the City's response. (*See generally* Doctoroff Decl.) To the extent Defendants need to test the factual underpinnings of the report, they have the final report and various drafts from Mercer.[2] Defendants, for example, allege that they should be able to explore the City's professed "competitive concerns." (Defs.' Reply at 7.) They believe various documents among the 101 "are likely to be admissions that the City does not view its competitive position to be as dire as it professes in this litigation." *Id.* The Court need not determine the truthfulness of this assertion, for an expedition into the minds of various City officials as to whether they believed the impact of the merger "dire" is entirely

---

[2] Mercer's Final Report was produced to HIP and GHI when it was finalized. (*See* Doctoroff Decl. ¶ 4.) The City has also provided Defendants with various redacted reports, including a July 25, 2006 "update" report and intermediate drafts of the final report, and the City planned to produce Mercer's preliminary report of July 25, 2006. (*See* Pl.'s Mem. at n.4; Defs.' Reply at 8-9.)

irrelevant to the underlying claims or defenses in the present antitrust litigation, initiated by the City.

After an in-depth review of the documents, the City asserted that all factual information contained in the 101 documents has been disclosed or is equally available to the Defendants as to Plaintiff and that "[t]he withheld materials consist primarily of the preliminary opinions and prospective analyses of government officials and their consultants." (*See* Pl.'s Mem. at 15.) The Court agrees, and finds the undisclosed information irrelevant to the City's antitrust claim and the Defendants' defenses.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to compel discovery is **DENIED.**

**SO ORDERED this 10th day of October 2008**
**New York, New York**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**